[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
"Under our law, with very limited exceptions, process in civil actions can only be served by certain designated officers to whom it must be addressed." Hartley v. Vitiello, 113 Conn. 74,79, 154 A. 255 (1931). The defendants in this case have filed a motion to dismiss claiming that the person who served process upon them was not a proper officer. Because this court concludes that the process server was, in fact, a proper officer, the motion must be denied.
The return in the file states that process was served on November 4, 1988, by one Vincent Germinaro ("Germinaro"), who describes himself as a deputy sheriff. The question before the court is whether Germinaro was, in fact, a deputy sheriff on that date. At an evidentiary hearing on December 2, 1991, the court heard testimony on this issue from Henry Healey, the High Sheriff of New Haven County and Elisabeth Germinaro, Germinaro's wife and secretary. The court also received a number of documentary exhibits. Germinaro himself was unable to testify because of poor health. From the evidence presented to it, the court finds the following facts.
Deputy sheriffs are appointed by the High Sheriff. Conn. CT Page 10513 Gen. Stat. Sec. 6-37. Germinaro was first appointed a deputy sheriff about thirty years ago. His most recent appointment recorded in the records of the Superior Court, see Conn. Gen. Stat. Sec. 6-45, is dated May 31, 1985. The certificate of appointment (Ex. D) states that Germinaro is to continue in office "until he shall be legally discharged therefrom." Sheriff Healey testified that his practice is to give his deputies annual appointments that expire on May 31st of each year. He admitted, however, that this practice has no statutory basis, and given the wording of Germinaro's May 31, 1985, certificate and the fact that the legislature has enacted an exclusive statutory procedure for the discharge of deputy sheriffs (discussed in detail below), the court concludes that Germinaro continued to be a deputy sheriff until "legally discharged."
In early May 1988, Sheriff Healey orally told Germinaro that he would be discharged at the end of the month. On June 1, 1988, Healey signed a letter, filed in the office of the clerk of the Superior Court on that date, stating in full, "Please be advised that effective this date, [Vincent] Germinaro has not been recommissioned as a deputy sheriff, for the New Haven County sheriff's department." (Ex. 1.) The letter ends "cc: V. Germinaro." Healey instructed his secretary to place a copy of the letter in the mail addressed to Germinaro on or about that day. There is, however, no satisfactory evidence as to the address to which the letter was directed or as to whether it was in fact sent, and the court is unable to make a finding as to that fact. Elisabeth Germinaro testified that at the time in question she opened all of her husband's mail received both at home and at the post office box he used for business. She did not recall receiving Healey's June 1, 1988 letter. Given the fact that she was married to Germinaro at the time, as well as working for him, the receipt of such a letter would most certainly have been remembered. Ms. Germinaro impressed the court as a truthful witness, and the court consequently finds that the letter was not received. The question presented to the court is whether this series of events was sufficient to bring about Germinaro's legal discharge.
This is a matter regulated entirely by statute. Conn. Gen. Stat. Sec. 6-45 provides that, "the sheriff may, at his pleasure, dismiss from office the deputies appointed by him, but only upon his delivering to the person removed a written discharge and filing a copy thereof with the clerk of the superior court in such county for record in the records of said court." This statute was first enacted in 1804. 12 Public Records of the State of Connecticut 40 (1986). It sets forth several requirements which must be satisfied for a discharge to be effective. It is clear, in the first place, that, in order to be effective, a discharge must be "written." Thus Healey's oral statement to Germinaro in CT Page 10514 early May 1988 that he would be discharged had no legal effect. A sheriff can say "You're fired" to a deputy until he is blue in the face, but his words are as wind until they take written form. Second, it is clear that two things must be done with the written discharge: it must be "deliver[ed] to the person removed" and "fil[ed] . . . with the clerk of the Superior Court." These requirements are conjunctive. Unless both are satisfied, the discharge is not lawful, and the deputy continues to be a deputy. There is no question here that Healey's letter of June 1, 1988 (Ex. 1) was filed with the clerk of the Superior Court. There is some question as to whether its statement that "effective this date, Mr. Germinaro has not been recommissioned as a deputy sheriff" is, in fact, a "discharge," but, at the very least, the statement can plausibly be read as such. The real question is whether this document was "deliver[ed] to the person removed."
The word "deliver" has a variety of meanings. Depending on its context it sometimes includes mailing and sometimes does not. See Zarillo v. Peck, 33 Conn. Sup. 676, 679, 366 A.2d 1165 (App. Sess.), cert. denied, 171 Conn. 731, 357 A.2d 515 (1976), and authorities cited therein. Indeed, the Connecticut legislature has defined the same term in different ways in different statutory contexts. In the Deposit Account Contract Act, "`Deliver' means deliver in person or place in the United States Mail with first class postage properly affixed." Conn. Gen. Stat. Sec. 36-27b(b). In the Uniform Commercial Code, it means a "voluntary transfer of possession." Sec. 42a-1-201(14). And in the dependency-producing drugs statutes it means an "actual, constructive or attempted transfer from one person to another." Sec. 21a-240 (11).
There are a number of other instances where the words "deliver" or "delivery" are used in the General Statutes unaccompanied by statutory definition. The taxation statutes, for example, require a fuel distributor to "deliver" a written statement concerning the fuel with each consignment or "delivery" of fuels. Sec. 12-457. The probate statutes allow the court of probate to "enforce the delivery to the successor fiduciary of any estate held by the former fiduciary," Sec. 45a-244, and require the custodian of a will to "deliver" it to the executor or court of probate after the testator's death, Sec. 45a-282 (a). Obviously many of these statutes would be rendered nonsensical by a construction which did not require actual receipt. The only general lesson which can be drawn from this survey, however, is that there can be no single, all-encompassing, one-size-fits-all definition of "deliver." Rather, the term must be analyzed in its particular statutory context with regard to the particular policies and interests implicated by the statute.
There are two distinct interests implicated by Sec. 6-45: the interest of the deputy in retaining his position until legally CT Page 10515 discharged and the interest of the public in being notified of any discharge. Arguably, the two prongs of the statute — the delivery to the deputy and the filing of notice with the clerk of the court — serve completely independent functions. The delivery informs the deputy, and the filing informs the public. An analogy to this model may be found in the law of deeds, where the delivery of a deed passes title to the grantee and the recording of the deed notifies the world. The analogy, however, is inexact. In the law of the deeds, recording is a statutory requirement, Sec. 47-10, but delivery is not. Delivery of a deed, a requirement of the common law, requires no particular form and is accomplished when "the obligor indicate[s] his intention to put the deed into the possession of the other party." Alsop v. Swathel, 7 Conn. 500,503 (1829). The delivery of a deputy sheriff's discharge is in contrast, an express requirement of statute.
Moreover, the physical act of delivery of a discharge serves an important function, for it is the written discharge that officially informs the deputy that he is no longer a deputy. The delivery of the discharge is intended to have an effect. Unless and until the deputy actually receives the written discharge, he is entitled to assume that he is a deputy and act as such. Once a written discharge is received, on the other hand, the deputy is officially notified that he is no longer a deputy and that he acts as such at his peril. Of course, the deputy here had oral notice of his impending discharge, but, as discussed above, that oral notice had no legal effect. Under Sec. 6-45, it is the written notice that counts.
The court concludes that because Germinaro never actually received Healey's June 1, 1988, notice of discharge, that notice was not "deliver[ed]." Germinaro was thus a proper officer for service of process on November 4, 1988, and the motion to dismiss must be denied.
Dated at Waterbury this 13th day of December, 1991.
JON C. BLUE, JUDGE JUDGE OF THE SUPERIOR COURT